Good morning. We have one argument set before this panel this morning and we're here to consider Kisor versus Wilkie. Case 16-1929. Mr. Carpenter, you have reserved five minutes of your time for rebuttal, correct? Yes, sir. Okay, you may proceed. May it please the court, Kenneth Carpenter appearing on behalf of James Kisor. Your honors, I do not believe that we are going to need to reach the question of deference in this case, even though that is the reason that this case was remanded from the Supreme Court. So you believe that the parties, everyone agrees that there's no, deference does not apply in this case? Well, at least that there is no ambiguity. And if there is no ambiguity, certainly there is no genuine ambiguity, in the words of Justice Kagan, then there is no basis for deference. I believe the only question is, is the adoption of the interpretation suggested by the government versus the interpretation supported by Mr. Kisor, which is now the definition that has been afforded by Congress as of August 2017, in its amendment to the provision to 38 U.S.C. 5108, as well as 38 U.S.C. 101. In 101, at parens 35, Congress defined separately from any definition in 5108, the term relevant evidence. Seems to me, Your Honor, and to Mr. Kisor, that that definition must control the outcome of this case, and that that is the definition that should be adopted by this court as to the meaning of the term relevant as used by the Secretary in his regulation at 38 U.S.C. FR 3.156C. And as a consequence, the issues of deference do not come into play, specifically the issue of whether or appropriate for the board to have rendered a interpretation since deference is not any longer at issue in this matter. 3.156D defines relevant. 3.156D defines relevant? It does. All right, Your Honor. You're going to have to help me out, Your Honor, because I do not understand. It's 3.156D says that relevant evidence is defined in 38 CFR 3.2501A1. All right. Except that that, I believe, is superseded by the definition that is created by Congress, that Congress's definition is the most recent expression of the intent of Congress, and that the Supreme Court, in this case, made it clear that in deciding how to interpret regulations, those regulations should be interpreted based upon the intent of Congress. Isn't there a well-established rule in statutory construction that the same word used in different parts of a regulation are intended to have the same meaning? Yes, they are, Your Honor. But the question is whether or not the reference back is controlling now that Congress has stepped in and offered us a definition that applies across the board to Title 38. And under Title 38, the Secretary's regulatory requirements are required to be in accordance with the laws that the Secretary is administering. And those laws are now dictated by the definition in 101 and are no longer dictated by any definition by reference in Part D of 38 USC, or excuse me, CFR 3.156D. The issue that, though, that we've been laboring under, or at least I have, is it's not what relevant means and what's the definition of relevant, but what it applies to. Is that still, in your view, up in the air in this case? As between the parties, I believe it is. As based upon the definition provided by Congress, Congress said... Doesn't that mean there's ambiguity if there is a difference in the views of the parties as to what relevance applies to? That certainly could be the case, Your Honor, yes. If this court were to determine that if there is a conflict in the definition or understanding of what it applies to, then that may create ambiguity. But that returns to the question, as articulated by the Supreme Court in this case, that this court is to examine the meaning based upon the tools of construction that are traditionally accepted. And the first tool of construction would be to look at the statute does or does not speak to that. The statute in this case tends to prove or disprove with the phrase, in this matter. I would suggest, Your Honor, that that is a clearly articulated lower standard from the standard that previously existed in 5108. 5108 had a new and material evidence standard, and Congress specifically spoke to the question of whether or not that is a lesser standard, the new and relevant evidence. And Congress specifically expressed its intent that relevant evidence be a lesser standard than new and material. Where in your brief do you discuss this? This lesser standard of new and material? No, it's not in my brief, Your Honor, because I was responding to the courts. I'm sorry, are you talking about my opening brief or the supplemental brief? The supplemental brief. I mean, what you're telling us today is that there's a new piece of legislation that determines the outcome of this case? I submitted that as supplemental authority, yes, Your Honor. I did so on November the 12th. Let me ask you this. The Supreme Court has given us our marching orders, and they said the first thing we have to do is determine whether the term relevant is ambiguous, correct? Now, as I read your supplemental brief, you're saying that in determining whether the term is ambiguous, we should resort to the pro-veteran canon of construction. And you basically say this at page two and pages 15 through 18 of your brief. I do, Your Honor. But that... But I don't think... I don't know if that's correct because the cases seem to say that you only get to the pro-veteran canon of construction if you first determine that the regulation is ambiguous. That seems to be what the court said in Gardner and what we said in Paralyzed Veterans and indeed what the Harvard Journal of Law and Public Policy says. And all of those statements were made prior to the decision of the Supreme Court in this case. And I believe that Justice Kagan indicated a different analysis was required and that analysis was to determine what the meaning was regardless of the issue of ambiguity before you get to the question of ambiguity. So you're saying that you only... You're saying that you invoke the pro-veteran canon in determining whether there's ambiguity? No, Your Honor. In determining what the meaning is of the regulation at issue. No, but the Supreme Court said we have to first determine whether the term relevant is ambiguous, right? That's not my reading of the Supreme Court decision in this case. My reading of the Supreme Court decision in this case is that you begin with the traditional tools of construction. To determine whether the term is relevant... is ambiguous. They said we jumped too quickly to finding ambiguity and that we should have resorted to the traditional tools of construction to determine whether there is ambiguity, right? That's not the way I read the decision, Your Honor. The way I read the decision is is it's to determine the meaning of the term or phrase at issue. Not to determine the question of ambiguity. That the question of ambiguity only comes into play after the court has determined that using the traditional tools that the court is unable to determine the meaning and therefore the term is ambiguous. Now that's the way that I read the Supreme Court's decision. Isn't Justice Kagan's opinion, where she sets out the analysis, applicable to the hour analysis? And if the government here says that, is arguing or that the hour doctrine does not apply in this case, then we don't have to get into that analysis, correct? That was my beginning statement and I believe that that is correct, Your Honor. But I think that's consistent with what I responded to Judge Schall about in terms of what this court is to look at in the first instance. Okay, so let's get back to what I thought was the initial ambiguity that we discussed. And when you're addressing whether relevant is ambiguous or not, what are you talking about? Are you talking about the definition of relevance? Or are you talking about what relevance, what the relevance standard applies to? I believe what was at issue in this case from the beginning was what the term relevant meant. Not necessarily in the context. It was the board that chose to decide that it had a special meaning based upon the original adjudication. And I reject that interpretation. That interpretation goes to areas that are not at issue for, if you will, step one of 3.156C, which is the question of whether to reconsider or not to reconsider. The question to reconsider is based upon the receipt of relevant service department records that had not been previously associated with the claims file. That is a binary choice to determine whether or not the secretary will be required to proceed to reconsideration. Can cumulative ever be relevant? I'm sorry, Your Honor? Can cumulative evidence ever be relevant? Assumance, cumulative. Honestly, Your Honor, I have to confess I hadn't thought about that question. My initial reaction is probably not, but it seems to me that there could be circumstances in which it could be dependent upon, as Judge Rayner was just suggesting, the context. If you look at the- Cumulative, by definition, right? Right. Yeah, right. So to be clear, is it Kaiser's position that relevant refers to the claims as a whole, or is it narrowly drawn to the initial prior decision? To the claim as a whole. In other words, it's a do-over. It's a question of whether or not the reconsideration is required because there is now relevant evidence from the service department records that affects the adjudication of the claim. If the government says it's not directed to the claim as a whole, but just to that prior decision, then we have the makings of an ambiguous term. You could certainly decide it that way, Your Honor, but it also seems to me that you have a binary choice between definitions of the term relevant. One that includes areas outside of the claim or the specific context of the claim that was originally decided, which I believe is beyond the scope of the intent of this remedial statute. Seems to me that the government has lost sight of the fact that this is a secretary's regulation that it wrote to remediate the failure of the secretary to collect all relevant service department records. How did the failure, though, impact the case? That, Your Honor, is not relevant. Forgive the pun. The reason that it is not relevant is that all that is being done here is to decide to reconsider or not to reconsider the original claim. But it was never disputed that he was in Operation Harvest Moon. I mean, that was known in 1983 when the original determination was made. Except, Your Honor, the reason that reconsideration is important, particularly in the context of this case, is that had the issue of his combat status been presented, then the view of the psychiatric evaluation would have been different. But his combat status was presented. As I read the examiner, he recognized he was in combat in Operation Harvest Moon. The examiner did, but the adjudicator did not. If you go to Appendix 23, that is the rating decision at issue. The findings are the veteran served in Vietnam and earned a Vietnamese service medal, good conduct medal, and national defense service medal. There is no mention that this veteran was a combat veteran. But it was known he was a combat veteran. I beg your pardon? It was known he was a combat veteran. He said he was. Apparently not to the adjudicator, Your Honor. And that's what needs to be reconsidered, is this original adjudication. Because if the original adjudication deprived Mr. Kaiser of the right to the benefit of 1154B to the presumption of the incurrence of this condition, then the diagnosis of the examiner would be different. Because he would have been a combat veteran in the eyes of the adjudicator, not in the eyes of the examiner. Okay. You used up your rebuttal time, but we'll restore it.  Mr. Hellman, just to get to the point before we use up too much time and everything, is it the government's position that the doctrine of R is not applicable in this case? Yes, Your Honor. There is no, the government is not contending that the agency's interpretation is entitled to deference. And do you view the regulation at question as being ambiguous or not? We view the question, the regulation as being unambiguous, Your Honor. And as Justice Kagan said in her, in the Supreme Court's opinion, this court has to use the tools such as text, structure, history, and purpose to examine the regulation before getting to deference. And here, that examination reveals that there is no ambiguity, even though, as often the parties disagree about the meaning, that doesn't mean that there's an ambiguity. Because... So what's the, what are we looking at here with respect to the term relevance? Are we looking at its definition as a word? Or are we looking at its application as a term? You're looking at the regulation. And you're looking at how that term is used in the regulation with respect to both, to the text, the structure, the purpose, and the history. And here, the... Your view is that the term only applies, the word relevance only applies to the initial decision? In this matter, yes. Because the purpose of the statute as, of this regulation, as even Mr. Kaiser points out, is remedialist, to fix the unavailability of records at the time of the original adjudication. Here, the... But he disputes that. Mr. Carpenter is saying that relevant records apply to the claim as a whole, not just to, it's just not narrowly drawn to that initial 1983 decision. But that runs counter to the purpose of this regulation. The purpose is to, and I think this goes to Judge Wallach's earlier point about cumulative evidence. If any service department record is considered relevant because it talks about Operation Harvest Moon, then every time a new service department record, a daily log or anything... I think the government's misspeaking in the sense that I'm taking your answer as saying, well, if new records came up that showed he was involved in an operation under the Parrotsby, that would not necessarily be relevant. That's the purpose of the change, right, of the new reg. A entirely new information comes in showing that something happened that wasn't in the records before. Or, for example, in Harvest Moon, he presents, they know he was in Harvest Moon, but he discovers the medical records that show that he was wounded. That would be a different, that record would certainly be relevant. But here, he's trying to overcome a lack of a medical diagnosis. But that's the purpose. As I understand it, that's the purpose of the change in the regs, for that new information to be applied to his situation. Yes, I think that's correct, Your Honor. Yes. It's to, and I think the Bluebon case... If on the other hand, they already know he's in Harvest Moon and he presents a unit citation saying the unit was in Harvest Moon, to me, that seems cumulative. That's right. Well, what's not cumulative, maybe, and I'd like your view on this, is evidence of the in-service stressor in order to establish PTSD. And that's what this new evidence indicates, correct? That he was in combat and he was actually fighting as opposed to saying, I was in Vietnam, I was in Harvest Moon. The new evidence actually shows his combat status. The new evidence, the service department records show that he was in combat, but that was already in the record. And this goes to Judge Schall's point that nobody disputed that he was in Harvest Moon. He came under enemy fire. There was an ambush. He lost some of his fellow soldiers in his company that resulted in 13 deaths. And this is at 19 through 20 of the appendix. The medical examiner had all that information and that was never questioned. It's not as if he was denied a PTSD diagnosis. I looked at the record and it appeared to me that a good part of the dictation bill that the examiner was looking at was missing. And he makes guesses. The examiner does note in the secondary letter on Appendix 21 that's issued two weeks after the first write-up of the examination that's at 18 through 20 that a portion of the original dictation has been lost. But he doesn't indicate anywhere in the second letter that he doesn't- But he goes on and says that, I was able to recall enough information to render an opinion. And he recalls- Is the opinion based on the actual status of a veteran or is it based on his ability to remember things? I mean, we don't know if the examiner can remember these things or not. He goes on and says, my diagnostic impression was at the time of the detection, he goes, it's my general recollection that this veteran is a very angry person. And on this basis, on these general recollections that he had because he had no evidence in front of him, he makes a decision that there's no lack of PTSD diagnosis. But he also, in that same write-up, notes the veteran's Vietnam combat situation. So, and that's- He's saying, Mr. Hellman, the question about the lost dictation relates only to the diagnosis of PTSD, not to the existence of a stressor. I think that's correct, Your Honor. It's unclear what portion of the original dictation- Let me ask you one thing. What is your response to Mr. Carpenter's opening argument where he talks about the new authority that was submitted, that he submitted in a letter after the supplemental briefing? He says that that new authority compels a different result here. We disagree with that reading. The new authority, and we didn't brief this issue, and we certainly would be happy to in a supplemental brief, but the new authority postdates the regulation, so it wouldn't be at issue here. But even if the court could consider it, it actually supports our view in that it defines relevance to be evidence that tends to prove or disprove a matter at issue. And you're saying the matter of a stressor was not at issue here? That's correct. It was the medical diagnosis that was missing at the outset. And again, that goes to the whole purpose of this regulation is to put the veteran in the same position he would have been in had those service department records been available. We have anything that tells us that an examiner, once they determine that someone was in combat, that the nature of the combat doesn't affect the diagnosis? I'm sorry, I'm not sure I quite understand the question. I've been in firefights. Some are worse than others. So that's all combat. If an examiner looks at a record and says, this person's been in combat, do they need to know that you're the sole survivor from a patrol and everybody else was killed and you were later asked to identify all the bodies? It seems to me that's particularly stressful. But do they just say, well, he was in combat, 100% stress? See what I'm saying? Is there anything that tells us that? When they weigh how much stress the individual had? I'm not aware of any VA regulation or policy that decides how much to weigh the particular combat experience here. Do you think that particular combat experience could be relevant? It could, in certain situations. It certainly could be relevant to the in-service stressor problem. It may possibly be relevant to medical. But if you have a yes on there's an in-service stressor, you don't have to go any further and say this one's worse than this one. Is that right? I think that's right, because I don't think you need to establish that. Once you establish the in-service stressor, that's enough for PTSD. Here, though, Mr. Kaiser's lack of diagnosis was based on his symptoms. The medical examiner met with him and evaluated him and said that his symptoms are more consistent with these other types of disorders, personality disorder and another one. So let's look at Appendix 21 again. Intermittent explosive disorder and atypical personality. Appendix 21. And this is the impression that's being given on the examination. Halfway through the paragraph, it says, however, I cannot recall the specifics of any symptom review. If he makes a diagnosis one way or the other, and he does not recall and has no other evidence of any symptom review, that's a lack of substantial evidence, wouldn't you say? Well, he... It was guesswork. Okay, let me ask you a question, because I want to make sure I understand this. What do you believe that the records need to be relevant to? The records need to be relevant to a matter of issue, to something that would matter. Here, records would not affect the outcome one way or another. And I think that's a fundamental problem that Mr. Kaiser can't overcome. He's trying to use service department records to overcome a lack of a medical diagnosis in 1983. And there's no way that those two cross over. If there was a medical diagnosis in those records, that would be different, but there's not. They only talk about... I mean, it says daily log and it's records of that kind that simply talk about the fact that he was in a combat operation called Harvest Moon. And that's already in the record. That was already before the examiner. There's no indication that... That was before the medical examiner, and there's no indication that that was not before the examiner who issued the rating decision. He looked at the diagnosis. He noted Mr. Kaiser's service in Vietnam. There's no dispute. It's not as if his claim was denied because they said, well, you've got PTSD, but we just don't think you were in combat, so you don't have an in-service stressor. They said you don't have PTSD. You don't have PTSD, so he can't overcome that with these records. One of the elements of PTSD is the in-combat stressor. That's one prong, but you have to have PTSD. That's a medical diagnosis. You have to have symptoms of PTSD. And here it was found that he had symptoms of... You can't make a PTSD diagnosis unless you have an in-service stressor. That's not necessary. That's not true, Your Honor. You can have PTSD... They first decide whether there's PTSD and then you look around for the stressor? PTSD is a medical condition. So if you present with certain symptoms, you are found to have PTSD, and then you look to see how did you incur that stressor? Again, when you talk about symptoms, I keep going back to the diagnosis says, however, I cannot recall the specifics of any symptom review. But the paragraph above that, Your Honor, and this is a factual determination that is not actually before this court or within this court's restriction to review, but even getting past that, the whole paragraph above that, and it's only two weeks after this initial write-up, so it's not as if years have gone by, talks about the examiner's recollection of the veteran as a very angry person who's concerned with issues of control. So he's presenting... Are those symptoms of PTSD? Your Honor... Explosive personality. I'm not a medical examiner. So there may be some overlap between the symptoms, but that's the medical examiner's job. I understand that. But I'm really curious whether if he had known of extremely severe stressors, it might have impacted his analysis of those, whatever you want to call them, events or traits or whatever. I think in isolation, if this person presented to the examiner with no background and the examiner just looked at his behavior, that would... And then he said, well, I don't know. He looks like explosive personality disorder. But that's a different case than here. He knows this is a veteran. He knows it's a combat veteran. He's a combat veteran. But is there not at least the possibility of a gradation of combat veterans? There has to be, is the correct answer, because some people are in combat and don't have PTSD or don't have it severely enough to disable them. And others do. But that may be multifactorial. That may be based both on the individual and the veteran. And I don't think the VA is in the business of determining how severe the combat stress needs to be to trigger benefits provided that you have a PTSD diagnosis. You have a medical exam and the examiner says you have PTSD or you don't. And then the in-service stressor is combat. Now, some scenarios may be more severe than others, but I don't think the VA necessarily distinguishes. Where in the record do we find evidence of an in-service stressor event was established? Where in the record do we see that, a finding of an in-service stressor? Well, the VA never got there in 1983, Your Honor, because there was no medical diagnosis. So what are these going back? They never got to that because the records weren't there. Well, no, because there was no medical diagnosis. If you don't have PTSD, the VA is not going to go and look for an in-service stressor because you don't have that disability. But the evidence of an in-service stressor, is that relevant to a diagnosis of PTSD? Not to the medical diagnosis, Your Honor. The medical diagnosis is done by the medical examiner. I always thought that in order to get to a diagnosis of PTSD, that there had to be an in-service stressor. To get benefits for a PTSD claim, yes. But the first and foremost requirement, aside from being a veteran, is to have... I mean, if there's no stressor at all, in-service or not, can you get to a PTSD finding? You can't. Diagnosis? You cannot. But you also cannot get there if you don't have a PTSD diagnosis. Okay. So these records are relevant to that decision, correct? Are they relevant to the 1983 claim or are they relevant to the claim as a whole, including the 2006? In 2006, he had a medical diagnosis. So then they become relevant because then you say, well, now you've shown that you have PTSD. Do you have an in-service stressor that caused the PTSD? And those medical records are relevant to that. They are relevant to a disability claim, correct? They are relevant to... A claim for disability benefits. If the veteran has established PTSD, they wouldn't be relevant to another disability claim, right? If you broke your arm, you wouldn't present... Okay. I think we have your argument. Okay. Thank you. Mr. Carpenter, we used up most of your time while ago, so we'll put you back at five minutes. Thank you. The problem with the position taken by the government is that they're urging an outcome-determinative analysis to be part of the definition of the term relevant. The term relevant should not include an outcome-determinative component. The notion of outcome-determinative component has been rejected by this court in Hodge in defining the regulation at 3.156A for the definition of new and material evidence, where outcome-determinative was taken from the social security context. Wait a minute. Wait a minute. Let me walk it backwards, Mr. Carpenter. What the government seems to be saying is, we look at the vet in isolation, purely its symptoms. And we say, based on the symptoms, you don't have PTSD. Therefore, we're not going to determine whether you are in combat or not. Is that correct? I understand that to be their position. Is it correct? It is not correct, Your Honor. And it is not correct because this system is based upon fully and sympathetically developing the claim before making the decision on the merits. You cannot do that if you don't have all of the relevant service department records in front of the examiner. The fact that Mr. Kaiser told him he was in Operation Harvest is a different question. The question here is, did the secretary do his duty to assist? Did he collect all relevant service department records? And the answer is clearly no. Why need to correct them if the fact's undisputed? I mean, if it's established that a fact, if you have to prove two facts, facts A and fact B to establish a claim, and fact A is not at all in dispute, but the question is fact B, namely the diagnosis. Why is it necessary to worry about the records? Because, Your Honor, that analysis applies to the reconsideration. It does not apply to determining whether there should be reconsideration. You're doing precisely what the government is doing in looking to the outcome, in trying to make the analysis in retrospect. Going back to, I think maybe you know better than me, but I think I'm looking, in terms of what I'm thinking, I think I'm looking back to the situation, and that seemed to be the way the Supreme Court looked at the case. That namely, you know, it was undisputed that he was in Operation Harvest Moon, and the only question that was at issue was the diagnosis of PTSD. But, Your Honor, with respect, that is to overstate the notion of undisputed. Of course it is undisputed that he was in Harvest Moon. The question is, what did the examiner know, and Judge Reyna has demonstrated from the record, that the examiner didn't know much and couldn't recall the specific symptoms. But that was with respect to the diagnosis. But critical to the diagnosis is whether he was or was not in combat, and that is a factor. He knew it because the veteran said so. But isn't that good enough? It certainly is not, Your Honor. I wish it was. This Court has consistently said that the veteran's statement that he or she was in combat is not sufficient to establish engaged in combat. But wasn't it good enough here in this case? No, Your Honor. Because... Let's take it as given that the examiner did accept that he was in combat. Does it matter what the flavor is? Yes, Your Honor, because it's up to the adjudicator to evaluate whether that is an adequate examination. And it's not an adequate examination if the examiner is merely taking the word of the veteran that he was in combat. The rules, as applied by the VA, require corroborating evidence that he was in combat. And if there is no corroboration... Let's assume he has corroborating evidence. He has something that says he was in Harvest Moon. Does it matter that what the examiner doesn't know is that a substantial number of his buddies were killed in that operation? Yes. And the only way he can know that is by having the Service Department records. Well, I should think that two weeks later... I don't know how they work, but you should think that... If the vet said, yeah, and 13 of my pals were killed and a bunch of guys were wounded and... But, Your Honor, under that analysis, you're shifting the burden to the veteran. No, I'm not. The burden... No, I'm not. I'm saying that if the notes don't reflect it, then the examiner didn't get it. And if he'd had those records, he would have gotten it. You follow my logic? If he had the records, he would have gotten it. Absolutely, Your Honor. But that's the critical piece here, is that the reason that 3.1568 and the government conceded, this is a remedial regulation. What happens when the VA doesn't do their job, when they don't get those records? There is no dispute that those records were not in the record. See, my concern is that logic tells me that you don't necessarily need those records. But logic tells me that if the vet had said these events happened, that the examiner would reflect it in his notes, because that's unusual stuff. Yes, Your Honor, but the failure of the veteran to have mentioned it should not be the basis upon which he is denied reconsideration. I don't disagree with you on that. I don't believe anything else, Your Honor. Now, do you want to conclude real quick? Are you done? Okay, thank you. Thank you. This concludes today's hearing. Court stands in recess. All rise. The Honorable Court is adjourned from day to day.